Anthony M. Gruppuso
**GRUPPUSO LEGAL**
560 Main Street
Chatham, New Jersey 07928
Phone:  973.433.9555
Email: gruppuso.legal@outlook.com
*Attorneys for Adina Straus*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| CARE ONE, LLC,<br><br>            Plaintiff,<br><br>      v.<br><br>ADINA STRAUS, MOSHAEL STRAUS,<br>JEFFREY RUBIN, and BETHIA STRAUS,<br><br>            Defendants. | *Document Filed Electronically*<br><br>Civil Action No.<br>2:15-cv-06375-MCA-LDW<br><br><br>**FIRST AMENDED COUNTERCLAIMS<br>AND FIRST AMENDED THIRD-<br>PARTY COMPLAINT OF<br>ADINA STRAUS** |
| JEFFREY RUBIN,<br><br>            Counterclaim Plaintiff,<br><br>      v.<br><br>CARE ONE, LLC, DANIEL STRAUS, DES<br>HOLDING CO., and DES-C 2009 GRAT,<br><br>            Counterclaim Defendants. | |
| ADINA STRAUS,<br><br><br>            Third-Party Plaintiff,<br><br>      v.<br><br>DANIEL STRAUS, DES HOLDING CO., DES-<br>C 2009 GRAT, and DES 2009 GST TRUST,<br><br>            Third-Party Defendants. | |

Counterclaimant and Third-Party Plaintiff Adina Straus ("Ms. Straus") repeats and realleges the allegations, averments, responses, denials, and affirmative defenses in paragraphs 1 through 60 of her Amended Answer (Dkt. 37) as if fully set forth herein as affirmative allegations in support of her First Amended Counterclaims and First Amended Third-Party Complaint, and further alleges the following against Care One, LLC ("Care One"); Daniel Straus ("Straus"); and DES Holding Co., Inc. ("DES Holding"), DES-C 2009 GRAT ("DES-C"), and DES 2009 GST Trust ("DES Trust," and collectively with DES Holding and DES-C, the "Straus Entities").

## INTRODUCTION

1.      This pleading alleges causes of action under Delaware law to remedy breaches of fiduciary duty and breaches of contract committed by Straus, the Straus Entities, and Care One. Acting solely out of his self-interest, in or about August 2015, Straus (with the aid and assistance of Care One and the Straus Entities) clandestinely conceived and executed a scheme to bestow upon himself, and then exercise, the purported right to "repurchase" the membership interest of Ms. Straus in Care One for an amount that is tens of millions of dollars *less* than the fair value of her interest (the "Repurchase Scheme" or the "Repurchase Transaction").

## FACTS

**I.      Care One is Formed, and Its Members Enter Agreements Governing the Management of Care One and the Relations of its Members.**

2.      Care One was formed under Delaware law in April 1998 and has since become a highly successful operator of post-acute nursing and assisted living facilities.

3.      From the outset, Care One was a family-run business designed to operate in the nursing and assisted living facility industry.

4.      In 1999, Care One's Class A members—Straus, his brother Moshael Straus, his sister Bethia Straus, his brother-in-law Jeffrey Rubin (who was at the time married to Ms. Straus), and Joel Jaffee (a close family advisor)—executed the Limited Liability Company Agreement of Care One, LLC dated as of April 1, 1999 (the "1999 LLC Agreement").

5.      Care One was formed with the understanding that it would operate as a family business, with the attendant trust and confidence of such an enterprise.  Accordingly, to protect each member's personal and financial interest in Care One, section 11.4 of the 1999 LLC Agreement prohibited any amendment that would reduce the rights of any member, unless the affected member consented to the amendment.

6.      In or about July 2006, Care One's members executed an Amended and Restated Limited Liability Company Agreement of Care One, LLC dated as of July 31, 2006, which was subsequently amended by an Amendment effective as of October 26, 2009, a Second Amendment dated as of 2010, and a Third Amendment dated as of March 27, 2012 (the "2006 LLC Agreement").

7.      The 2006 LLC Agreement contained the same section 11.4 as the 1999 LLC Agreement and thus allowed amendment of its provisions subject to strict limitations intended to protect the economic and other rights of Care One's members.

8.      The 1999 LLC Agreement and the 2006 LLC Agreement each manifested the understanding and agreement that no actions would be taken that would unduly or unjustly undermine the rights and interests of any Care One member.

9.      And neither the 1999 LLC Agreement nor the 2006 LLC Agreement eliminated or modified the traditional fiduciary duties of loyalty and care that Straus (as Care One's manager) owed to Care One and its members under Delaware law.

10.     Accordingly, since Care One's formation, Straus owed fiduciary duties to Care One's members under Delaware law.

11.     Since October 2009, Ms. Straus has been a Class A Member of Care One, and in August 2015, she held a Relative Interest (as that term is defined in the 2006 LLC Agreement) of 4.4103437%.

12.     In an egregious breach of his fiduciary duties, Straus secretly launched the Repurchase Scheme to take Ms. Straus's interest in Care One for an amount that is tens of millions of dollars less than her interest's true value.

II.     **Straus Conceives and Executes the Repurchase Scheme.**

13.     The Repurchase Scheme had three primary components:  first, Straus would amend Care One's operating agreement to create his "repurchase" rights and eliminate his fiduciary duties; second, Straus would exercise his self-bestowed "repurchase" rights to take Ms. Straus's membership interest in Care One without her knowledge and at an unfair price determined unilaterally by Straus; and third, Straus would commence this litigation asking the Court to validate his bad faith, disloyal conduct.

        **A.**     ***Straus grants himself "repurchase" rights.***

14.     Since July 2006, Care One operated under the 2006 LLC Agreement.  But the 2006 LLC Agreement did not permit Straus to unilaterally "repurchase" the interests of any Care One member except through an arm's length transaction.

15.     Sections 9.1 through 9.7 of the 2006 LLC Agreement specify those circumstances under which a member's interest could be transferred.  Section 9.3, for example, details the process through which Care One and its members can exercise a right of first refusal should a member give notice that it has received a "bona fide offer" for the member's interest from a third

party that the member wishes to accept.  Section 9.4 describes how Care One's members can

"tag along" to the sale by another member of a portion of its interest to a third party.  And only

when those Care One members holding a majority interest in the company desired to sell their

entire interests could another member be compelled to sell its interest according to the "drag

along" procedures set forth in section 9.5.

16.     Because the 2006 LLC Agreement did not allow Straus to compel the sale of Ms.

Straus's interest unless he was selling his interests, the first step in Straus's Repurchase Scheme

required the amendment of the 2006 LLC Agreement.  Without notice to Ms. Straus and without

her consent, Straus executed (in his name and on behalf of the Straus Entities) a Care One, LLC

Resolution and Written Consent of Members dated August 21, 2015 (the "8/21 Resolution") that

purported to adopt and approve the Second Amended and Restated Limited Liability Company

Agreement of Care One, LLC dated as of August 21, 2015 (the "2015 LLC Agreement").

17.     At section 9.8 of the 2015 LLC Agreement, Straus created what he called the

"Member Repurchase Option," and its subsection (a) provided:

> To simplify the capital structure of the Company or for any other reason,
> with or without cause, Members holding a Supermajority Interest (the
> "Purchasing Member or Members") may vote to purchase the Interest of
> any or all other Members, for a Member Affiliate to purchase the Interest
> of any or all other Members, or may cause the Company to purchase the
> interests of any or all other Members (a "Repurchase Vote").  Any
> Member whose interest is repurchased pursuant to a Repurchase Vote
> shall be referred to as a Disassociated Member.

18.     The 2015 LLC Agreement defined a "Supermajority Interest" as those members

"holding an aggregate Relative Interest . . . greater than 75%."

19.     When the 8/21 Resolution was adopted, Straus owned in his name a Relative

Interest in Care One of 41.27168%.  He owned through DES Holding—in which he is the sole

shareholder—an additional Relative Interest of 21.67282%.  Straus also controlled, as trustee of

DES-C, an additional Relative Interest of 20.98150%.  In total, Straus owned and controlled 83.926% of Care One's Relative Interests.

20.     Notwithstanding his attempt to disguise section 9.8 with the neutral title of "Member Repurchase Option," only Straus held a Supermajority Interest and thus only he could exercise, at his whim, the "repurchase" rights he purported to create.

21.     Straus adopted the 2015 LLC Agreement and its section 9.8 so he could exercise his newly-minted "repurchase" powers, and he took the time to include a critical sentence in the 2015 LLC Agreement that was designed to protect him after he did so.

**B.      *Straus eliminates his fiduciary duties.***

22.     Under Delaware law, a manager of a Delaware limited liability company owes, by default, the traditional fiduciary duties of loyalty and care to the company's members.

23.     Notwithstanding the default imposition of those fiduciary duties upon a manager, Delaware law allows members to alter or eliminate them, but the company's operating agreement must do so by express, clear, plain, unambiguous, and explicit language.

24.     The 2006 LLC Agreement does not eliminate or modify the fiduciary duties that Straus owed under Delaware law, and he thus owed those fiduciary duties to Care One's members throughout his conception and execution of the Repurchase Scheme.

25.     Section 6.1 of the 2006 LLC Agreement addresses the management and control of Care One and provides:

> 6.1     Management and Control of the Company.  The management, operation and control of the business and affairs of the Company shall be vested exclusively in the Manager, except as otherwise provided for in this Agreement.  The Manager shall have, and is hereby granted, the full and complete power, authority and discretion, for on behalf of and in the name of the Company, to perform all contracts and other undertakings that it may in his sole discretion deem necessary or advisable to carry out any and all of the objects and purposes of the Company.  The power and

authority of the Manager may be delegated, in whole or in part, by the Manager to the officers of the Company or any other Person engaged to act on behalf of the Company.  At all times prior to the occurrence of a Change of Manager, Daniel Straus (a) shall personally remain involved in the management of the Company's affairs either as Manager or as the chief executive officer of the Manager and (b) shall devote such time to the affairs of the Company as he shall reasonably determine is necessary and appropriate to the needs of the Company.

26.     Straus was undoubtedly aware that he owed Care One's members the traditional fiduciary duties of loyalty and care and that section 6.1 of the 2006 LLC Agreement did not modify or eliminate them.

27.     And knowing what he sought to accomplish through the Repurchase Scheme, Straus amended section 6.1 to include a sentence that purported to eliminate his fiduciary duties.

28.     Section 6.1 of the 2015 LLC Agreement is nearly identical to its predecessor, except for the insertion of a new second sentence:

6.1     Management and Control of the Company.  The management, operation and control of the business and affairs of the Company shall be vested exclusively in the Manager, except as otherwise provided for in this Agreement.  ***The Manager shall have no duties (including fiduciary duties) except as expressly set forth in this Agreement.***  …. (Emphasis added).

29.     Straus's blatant and egregious attempt to shed his fiduciary duties constitutes a breach of section 11.4 of the 2006 LLC Agreement, and, moreover, it is part and parcel of his breaches of fiduciary duty in carrying out the Repurchase Scheme.

**C.     *Straus exercises his "repurchase" rights.***

30.     With his absolute power over Care One's equity interests established, Straus wasted no time in wielding it.

31.     Without notice to Ms. Straus and without her consent, Straus executed (in his name and on behalf of the Straus Entities) a Care One, LLC Resolution and Written Consent of

Members dated August 24, 2015 (the "8/24 Resolution"), according to which he purported to exercise his newly-minted, self-conferred "repurchase" rights to transfer Ms. Straus's membership interest in Care One to DES Trust.

32.    In or about early September 2015, Ms. Straus received a check from DES Trust. The check did not indicate that it purported to represent the "repurchase" price determined by Straus for her interest in Care One.

33.    Sometime later that month, Ms. Straus received a letter from Care One enclosing the 8/21 Resolution, the 8/24 Resolution, and the 2015 LLC Agreement. The letter purported to be the "Repurchase Notice" required by section 9.8(b) of the 2015 LLC Agreement, informing Ms. Straus that Straus and the Straus Entities had "repurchased" her interest in Care One and that she was no longer a member.

**D.    *Straus commences litigation in this Court.***

34.    To establish a basis for federal subject matter jurisdiction and to fix venue in this forum, Straus caused Care One to file a one-count Complaint against Ms. Straus in the U.S. District Court for the District of New Jersey seeking equitable relief under the Employee Retirement Income Security Act of 1974 for Ms. Straus's alleged unauthorized participation in a health care plan sponsored by Care One Management, LLC.

35.    The Complaint was filed on August 24, 2015, the same day that the 8/24 Resolution was adopted.

36.    A Summons was issued on August 25, 2015, but it was not served with the Complaint. In fact, the Complaint was never served on Ms. Straus.

37.    Instead, Care One filed a First Amended Complaint on August 27, 2015, in which Care One asserted (in addition to its ERISA claim against Ms. Straus) a cause of action for declaratory judgment against Ms. Straus and the other minority members of Care One to

establish the legitimacy of the Repurchase Scheme and the consequent dissociation of Ms. Straus as a member of Care One.

### III.    Straus Cannot Establish the "Entire Fairness" of the Repurchase Transaction as Required by Delaware Law.

38.    The Repurchase Scheme was conceived by Straus to eliminate Ms. Straus (and others) as members of Care One and possessed no legitimate business purpose.

39.    Through the Repurchase Scheme, Straus effectively gave himself the absolute power to sell Ms. Straus's interest to himself on terms that he declared.

40.    Straus suffered from an irreconcilable conflict of interest, standing on both sides of the transaction as the one forcing the sale, the one controlling the buyer, and the one determining the "repurchase" price that the buyer would pay.

41.    Straus's self-interest and self-dealing in carrying out the Repurchase Scheme are self-evident and deny him the protections of Delaware's business judgment rule.

42.    When the business judgment rule does not apply, Delaware courts apply the entire fairness standard of review to determine whether the manager of a limited liability company has breached the fiduciary duty of loyalty owed by the manager to the company and its members.

43.    The burden will therefore be on Straus to prove, to the Court, the "entire fairness" of the Repurchase Transaction.

44.    Entire fairness has two basic aspects:  fair dealing and fair price.

45.    The former embraces questions of when the transaction was timed and how it was initiated, structured, negotiated, and disclosed.

46.    The latter concerns the economic and financial considerations of the transaction, including all relevant factors such as the company's assets, market value, earnings, forecasts, and any other elements that affect the intrinsic or inherent value of a company's equity interests.

47.     Although the entire fairness analysis is structurally bifurcated, it is conceptually singular, because the Court must consider all aspects of the challenged transaction to determine whether it is entirely fair.

48.     From conception through execution, the Repurchase Transaction was not the product of fair dealing but instead resulted from a clandestine process that Straus dictated and controlled.

49.     Notwithstanding his obvious conflicts of interest, Straus took no measures to withdraw from the Repurchase Transaction.  He did not appoint an independent party to represent Ms. Straus, and, indeed, no arm's length negotiations took place over any aspect of the transaction.

50.     Straus announced the "repurchase" formula and set the "repurchase" price without any professional valuation of Care One performed according to generally-accepted methodologies and practices, without any fairness opinion concerning the "repurchase" price itself, and without any care to inform himself of the fair value of Care One's equity interests.

51.     Straus didn't even comply with the terms of the very "repurchase" provisions of the 2015 LLC Agreement he created to take Ms. Straus's interest.

52.     Section 9.8(e) of the 2015 LLC Agreement required the "repurchase" price to be determined by "an appraiser … with full access to [Care One's] financial and other data … [and to do so] impartially, in good faith and on an independent basis."  Pursuant to section 9.8(f), the written "appraisal required" by section 9.8(e) was to be submitted to Care One's members within 75 days of the 8/21 Resolution and the "repurchase" vote it purported to memorialize.

53.     Under the Uniform Standards of Professional Appraisal Practice, an "appraisal" is "the act or process of developing an opinion of value; an opinion of value."  The Comment to

10

that definition explains, "An appraisal must be numerically expressed as a specific amount, as a range of numbers, or as a relationship (e.g., not more than, not less than) to a previous value opinion or numerical benchmark (e.g., assessed value, collateral value)."  No such appraisal has ever been delivered to Ms. Straus, and it appears that one was never performed.

54.     Although the "Repurchase Notice" sent by Care One falsely stated that Eureka Valuation Advisors ("Eureka") had "determine[d]" the "repurchase" price for Ms. Straus's interest, Eureka did not analyze Care One's financial condition and did not state a value for either Care One or Ms. Straus's membership interest.

55.     Indeed, Eureka expressly disclaimed that it performed a professional appraisal of Care One:

> Eureka did not perform an independent appraisal of the Company and our scope was limited to the procedures specifically defined in this report. Therefore, this report has not been prepared in accordance with [the Uniform Standards of Professional Appraisal Practice].

56.     And to highlight this self-interested, one-sided process, Straus tried to limit the consequences of his bad faith, disloyal conduct in executing the Repurchase Scheme by amending section 6.1(a) to attempt to eliminate the fiduciary duties he owed Ms. Straus under Delaware law, the 1999 LLC Agreement, and the 2006 LLC Agreement.

57.     Not surprisingly, the Repurchase Transaction's unfair process resulted in an unfair price tendered to Ms. Straus for her interest.

58.     The "repurchase" price was determined according to Straus's flawed "formula" that did not consider all generally-accepted valuation methodologies.  The "formula" was based on a market approach to valuation, but a valuation performed according to professional standards would require consideration of income-based approaches and asset-based approaches as well.

Indeed, the valuation methodology most favored by Delaware courts is the discounted cash flow method, which is an income-based approach not utilized by Straus.

59.     The "formula" uses the wrong economic metric and applies an inappropriate multiple to that metric.  Straus's "repurchase formula" also improperly discounted the value of Ms. Straus's interest by 40% for a purported lack of marketability and lack of control.  Lastly, but perhaps most importantly, the "formula" subtracted from Care One's enterprise value the sum of its debt but did not add the value of the property securing that debt.  By doing so, the "formula" unconscionably removed hundreds of millions of dollars from Care One's value.

60.     Consequently, the fair value of Ms. Straus's interest in Care One is approximately 40 to 60 times more than the "repurchase" price tendered by Straus.

61.     Because of the breaches of fiduciary duty committed by Straus and the Straus Entities and their other wrongful conduct, the Court has broad discretionary power under Delaware law to fashion any form of equitable or monetary relief to ensure that the wrongdoers will not profit from their conduct and that Ms. Straus will not be harmed.  And, because an actual case or controversy exists concerning the enforceability of various sections of the 2015 LLC Agreement, the Court can issue the declaratory relief that Ms. Straus seeks.

## COUNT ONE
### Breach of Section 11.4 of 2006 LLC Agreement - Amendment of Section 9.8 by 8/21 Resolution and Adoption of 2015 LLC Agreement

62.     Ms. Straus repeats and realleges the allegations in paragraphs 1 through 61 as if fully set forth herein.

63.     The 2006 LLC Agreement is a valid and enforceable contract.

64.     Section 11.4 of the 2006 LLC Agreement specifically prohibits any amendment

        so as to (i) reduce any Member's share of the Company's distributions,
        income or gains, increase any Member's share of the Company's losses, or

12

> otherwise reduce the rights granted to any Member or increase the obligations of any Member if such reduction or increase would adversely affect such Member, without the consent of each Member to be adversely affected by the amendment ….

65.     Section 11.4 expressly prohibits any amendment that would adversely affect a member's rights.

66.     The 8/21 Resolution purports to amend the 2006 LLC Agreement through adoption of the 2015 LLC Agreement.

67.     Among other things, the 2015 LLC Agreement contains a new section 9.8 called the "Member Repurchase Option."

68.     Section 9.8(a) states:

> To simplify the capital structure of the Company or for any other reason, with or without cause, Members holding a Supermajority Interest (the "Purchasing Member or Members") may vote to purchase the Interest of any or all other Members, for a Member Affiliate to purchase the Interest of any or all other Members, or may cause the Company to purchase the interests of any or all other Members (a "Repurchase Vote").

69.     The 2015 LLC Agreement defines "Supermajority Interest" as those members "holding an aggregate Relative Interest . . . greater than 75%."

70.     Only Straus (with a Relative Interest of 83.926%) held and controlled a Supermajority Interest in Care One following the purported adoption of the 2015 LLC Agreement.

71.     Only Straus could exercise his self-declared "repurchase" rights, and section 9.8 did not grant Ms. Straus any reciprocal "repurchase" rights.

72.     The amendment to section 9.8 benefitted only Straus and the Straus Entities to the detriment of Ms. Straus.

73.     The attempted creation of Straus's "repurchase" rights constitutes an amendment of the 2006 LLC Agreement "so as to … reduce the rights granted to any Member" within the meaning of section 11.4 of the 2006 LLC Agreement.

74.     Section 11.4 of the 2006 LLC Agreement therefore prohibited adoption of section 9.8 of the 2015 LLC Agreement without Ms. Straus's consent.

75.     Ms. Straus did not consent to the adoption of the 2015 LLC Agreement and its section 9.8.

76.     Straus, DES Holding, and DES-C breached section 11.4 of the 2006 LLC Agreement by issuing the 8/21 Resolution and purporting to amend the 2006 LLC Agreement through adoption of the 2015 LLC Agreement and its section 9.8.

77.     Section 9.8 of the 2015 LLC Agreement is unenforceable.

78.     Ms. Straus has suffered damages because of this breach of contract committed by Straus, DES Holding, and DES-C.

## COUNT TWO

**Breach of Section 11.4 of 2006 LLC Agreement - Amendment of Section 6.1 by 8/21 Resolution and Adoption of 2015 LLC Agreement**

79.     Ms. Straus repeats and realleges the allegations in paragraphs 1 through 78 as if fully set forth herein.

80.     The 2006 LLC Agreement is a valid and enforceable contract.

81.     Section 6.1 of the 2006 LLC Agreement addresses the management and control of Care One.

82.     Section 6.1 of the 2006 LLC Agreement does not contain a statement eliminating or modifying the traditional fiduciary duties of loyalty and care that Straus (as Care One's manager) owes under Delaware law to Care One and its members.

14

83. Section 11.4 of the 2006 LLC Agreement specifically prohibits any amendment

so as to (i) reduce any Member's share of the Company's distributions, income or gains, increase any Member's share of the Company's losses, or otherwise reduce the rights granted to any Member or increase the obligations of any Member if such reduction or increase would adversely affect such Member, without the consent of each Member to be adversely affected by the amendment ….

84. Section 11.4 expressly prohibits any amendment that would adversely affect a member's rights.

85. The 8/21 Resolution purports to amend the 2006 LLC Agreement through adoption of the 2015 LLC Agreement.

86. Among other things, the 2015 LLC Agreement changes section 6.1 to include the following sentence: "The Manager shall have no duties (including fiduciary duties) except as expressly set forth in this Agreement."

87. Under the 2006 LLC Agreement and Delaware law, Straus, as Care One's manager, owed Ms. Straus the traditional fiduciary duties of loyalty and care.

88. The 2015 LLC Agreement purports to eliminate Ms. Straus's right to Straus's performance of his managerial duties according to the standards of a fiduciary.

89. The amendment to section 6.1 benefitted only Straus to the detriment of Ms. Straus.

90. The attempted elimination of Ms. Straus's right to demand Straus's performance of his fiduciary duties constitutes an amendment of the 2006 LLC Agreement "so as to … reduce the rights granted to any Member" within the meaning of section 11.4 of the 2006 LLC Agreement.

91. Section 11.4 of the 2006 LLC Agreement therefore prohibited adoption of section 6.1 of the 2015 LLC Agreement without Ms. Straus's consent.

15

92.     Ms. Straus did not consent to the adoption of the 2015 LLC Agreement and its section 6.1.

93.     Straus, DES Holding, and DES-C breached section 11.4 of the 2006 LLC Agreement by issuing the 8/21 Resolution and purporting to amend the 2006 LLC Agreement through adoption of the 2015 LLC Agreement and its section 6.1.

94.     Section 6.1 of the 2015 LLC Agreement is unenforceable.

95.     Ms. Straus has suffered damages because of this breach of contract committed by Straus, DES Holding, and DES-C.

**COUNT THREE**

**Breach of Section 11.4 of 2006 LLC Agreement - Amendment of Section 7.2 by Adoption of Second Amendment to 2006 LLC Agreement**

96.     Ms. Straus repeats and realleges the allegations in paragraphs 1 through 95 as if fully set forth herein.

97.     The 2006 LLC Agreement is a valid and enforceable contract.

98.     Prior to the Second Amendment to the 2006 LLC Agreement, section 7.2(a) of the 2006 LLC Agreement provided in part:

> To the extent not prohibited by mandatory provisions of law that cannot be waived, the Company shall indemnify and hold harmless … the Manager … from and against any and all claims, liabilities, damages, losses, costs and expenses (including amounts paid in satisfaction of judgments, in compromise and settlements, as fines and penalties and legal or other costs and reasonable expenses of investigating or defending against any claim or alleged claim) of any nature whatsoever, known or unknown, liquidated or unliquidated, that are incurred by any Indemnitee and arise out of or in connection with (i) the affairs of the Company or the performance by such Indemnitee of any of the Indemnitee's responsibilities hereunder, … or (iii) the matters contemplated herein; ***provided that an Indemnitee shall not be entitled to indemnification hereunder to the extent that such Indemnitee's conduct is determined by a final judgment or other final adjudication adverse to the Indemnitee to have constituted bad faith,***

16

>   ***intentional misconduct or a willful violation of law or of this Agreement***.
>   (Emphasis added).

99.   Prior to the Second Amendment to the 2006 LLC Agreement, section 7.2(b) of

the 2006 LLC Agreement recognized the import of the proviso clause and stated:

>   The Company shall pay expenses reasonably incurred by any Indemnitee
>   in defending any action, suit or proceeding described in subsection (a) of
>   this Section 7.2 in advance of the final disposition of such action, suit or
>   proceeding upon receipt of an undertaking by or on behalf of such
>   Indemnitee to ***repay such advance if it shall ultimately be determined***
>   ***that such Indemnitee is not entitled to be indemnified by the Company***
>   ***pursuant to this Section 7.2***.   (Emphasis added).

100.   The Second Amendment to the 2006 LLC Agreement changed section 7.2(a) in a

material way adverse to Ms. Straus.

101.   By adopting the Second Amendment, Straus caused section 7.2(a) to read:

>   The Company shall indemnify and hold harmless Daniel E. Straus, in his
>   capacity as the Manager, from and against any and all claims, liabilities,
>   damages, losses, costs and expenses (including amounts paid in
>   satisfaction of judgments, in compromise and settlements, as fines and
>   penalties and legal or other costs and reasonable expenses of investigating
>   or defending against any claim or alleged claim) of any nature whatsoever,
>   known or unknown, liquidated or unliquidated, that are incurred by [the]
>   Manager and arise out of or in connection with (i) the management,
>   operation, actions or inactions of the Company (or any Person owned in
>   whole or in part by the Company) or the performance by him of any of the
>   Manager's responsibilities hereunder, or (ii) the service by him as a
>   partner, member, director, officer, trustee, employee or agent of any other
>   Person (including, without limitation, serving as a manager of any Person
>   owned in whole or in part by the Company).

102.   Straus's amendment of section 7.2(a) thus eliminated the critical proviso clause

that extinguished his right to indemnification for bad faith, intentional misconduct, or willful

violation of law or the 2006 LLC Agreement.

103.   Section 11.4 of the 2006 LLC Agreement specifically prohibits any amendment

17

so as to (i) reduce any Member's share of the Company's distributions, income or gains, increase any Member's share of the Company's losses, or otherwise reduce the rights granted to any Member or increase the obligations of any Member if such reduction or increase would adversely affect such Member, without the consent of each Member to be adversely affected by the amendment ….

104.    Section 11.4 expressly prohibits any amendment that would adversely affect a member's rights.

105.    The Second Amendment to the 2006 LLC Agreement purported to amend section 7.2(a) and removed former section 7.2(b).

106.    Among other things, the Second Amendment to the 2006 LLC Agreement changed section 7.2(a) by eliminating the limitation on indemnification should Straus's conduct be adjudicated "to have constituted bad faith, intentional misconduct or a willful violation of law or of this Agreement."

107.    The 2006 LLC Agreement's limitation on indemnification provided Ms. Straus with a protective right against Straus's bad faith and his intentional and willful misconduct.

108.    The amendment to section 7.2(a) benefitted only Straus to the detriment of Ms. Straus.

109.    The attempted elimination of Ms. Straus's right to enforce a limitation on the scope of Straus's right to indemnification constitutes an amendment of the 2006 LLC Agreement "so as to … reduce the rights granted to any Member" within the meaning of section 11.4 of the 2006 LLC Agreement.

110.    Section 11.4 of the 2006 LLC Agreement therefore prohibited adoption of section 7.2(a) of the Second Amendment, and the elimination of section 7.2(b), without Ms. Straus's consent.

111.    Ms. Straus did not consent to the adoption of the Second Amendment to the 2006 LLC Agreement and its section 7.2(a), and she did not consent to section 7.2(b)'s elimination.

112.    Straus, DES Holding, and DES-C breached section 11.4 of the 2006 LLC Agreement by adopting the Second Amendment to the 2006 LLC Agreement.

113.    The Second Amendment to the 2006 LLC Agreement is unenforceable to the extent that it amended section 7.2 of the 2006 LLC Agreement.

114.    Ms. Straus has suffered damages because of this breach of contract committed by Straus, DES Holding, and DES-C.

## COUNT FOUR

**Breach of Section 11.4 of 2006 LLC Agreement - Amendment of Section 7.2 by 8/21 Resolution and Adoption of 2015 LLC Agreement**

115.    Ms. Straus repeats and realleges the allegations in paragraphs 1 through 114 as if fully set forth herein.

116.    Because the Second Amendment to the 2006 LLC Agreement is void to the extent it amended section 7.2(a) and eliminated former section 7.2(b), section 7.2(a) and section 7.2(b) of the 2006 LLC Agreement (as it existed prior to the Second Amendment) were in full force and effect as of August 21, 2015.

117.    Section 7.2(a) of the 2006 LLC Agreement provided Care One's manager (among others) with a right to be indemnified for liabilities and losses incurred by the manager arising out of the performance of the managerial obligations set forth in the 2006 LLC Agreement.

118.    Straus's right to indemnification was limited, however.

119.    Section 7.2(a) provided that Straus would not be entitled to indemnification "to the extent … [his] conduct is determined by a final judgment or other final adjudication adverse

to [him] to have constituted bad faith, intentional misconduct or a willful violation of law or of this Agreement."

120.    Section 7.2(b) protected Care One and its members should Straus be found to have engaged in such conduct by requiring Straus to repay to the company all monies advanced under the indemnification obligations of section 7.2(a).

121.    The 8/21 Resolution purported to adopt the 2015 LLC Agreement, which, among other things, provided Straus with unlimited indemnification rights.

122.    Section 7.2(a) of the 2015 LLC Agreement does not contain the limitation on indemnification should Straus's conduct be adjudicated "to have constituted bad faith, intentional misconduct or a willful violation of law or of this Agreement."

123.    The 2006 LLC Agreement's limitation on indemnification provided Ms. Straus with a protective right against Straus's bad faith and his intentional and willful misconduct.

124.    The amendment to section 7.2(a) benefitted only Straus to the detriment of Ms. Straus.

125.    The attempted elimination of Ms. Straus's right to enforce a limitation on the scope of Straus's right to indemnification constitutes an amendment of the 2006 LLC Agreement "so as to … reduce the rights granted to any Member" within the meaning of section 11.4 of the 2006 LLC Agreement.

126.    Section 11.4 of the 2006 LLC Agreement therefore prohibited adoption of section 7.2(a) of the 2015 LLC Agreement without Ms. Straus's consent.

127.    Ms. Straus did not consent to the adoption of the 2015 LLC Agreement and its section 7.2(a).

128.    Straus, DES Holding, and DES-C breached section 11.4 of the 2006 LLC Agreement by issuing the 8/21 Resolution and purporting to amend the 2006 LLC Agreement through adoption of the 2015 LLC Agreement and its section 7.2(a).

129.    Section 7.2(a) of the 2015 LLC Agreement is unenforceable.

130.    Ms. Straus has suffered damages because of this breach of contract committed by Straus, DES Holding, and DES-C.

## COUNT FIVE
### Breach of Fiduciary Duties of Loyalty and Care

131.    Ms. Straus repeats and realleges the allegations in paragraphs 1 through 130 as if fully set forth herein.

132.    As manager of Care One, Straus owed Ms. Straus the fiduciary duties of loyalty and care.

133.    That fiduciary duty of loyalty mandated that the best interests of Care One and its members take precedence over any interest possessed by Straus and not shared by the members generally.

134.    That fiduciary duty of care required that Straus use that amount of care that an ordinarily careful and prudent person would use in similar circumstances and consider all material information reasonably available to him in making business decisions.

135.    In conceiving and carrying out the Repurchase Transaction, Straus acted solely out of self-interest and without regard for the best interests of Ms. Straus.

136.    The Repurchase Transaction is subject to the entire fairness standard of review applicable under Delaware law because of Straus's self-dealing.

137.    Straus did not fully inform himself of all material, reasonably available information concerning Care One's value.

138.    The Repurchase Transaction was the product of unfair dealing.

139.    The Repurchase Transaction was executed at an unfair price.

140.    The Repurchase Transaction was not entirely fair under Delaware law.

141.    Accordingly, Straus breached his fiduciary duties of loyalty and care owed to Ms. Straus.

142.    Ms. Straus has suffered damages because of the breaches of fiduciary duty committed by Straus.

**COUNT SIX**

**Aiding and Abetting Breach of Fiduciary Duty**

143.    Ms. Straus repeats and realleges the allegations in paragraphs 1 through 142 as if fully set forth herein.

144.    As manager of Care One, Straus owed Ms. Straus the fiduciary duties of loyalty and care.

145.    Straus breached his fiduciary duties by conceiving and carrying out the Repurchase Scheme.

146.    Straus owns and controls, directly or indirectly, each of the Straus Entities.

147.    On behalf of DES Holding and DES-C (both members of Care One and together with Straus's interest held in his name comprising a "Supermajority Interest"), Straus signed the 8/21 Resolution and the 8/24 Resolution that effected the Repurchase Transaction.

148.    Straus caused DES Trust to act as the "Repurchasing Member" of Ms. Straus's interest in Care One.

149.    Straus's domination and control over the affairs of the Straus Entities warrants imputation of his knowledge and conduct to them.

150.    The Straus Entities sought to benefit from Straus's conduct—particularly DES Trust, which purports to hold Ms. Straus's interest in Care One.

151.    Accordingly, through the role they played in the Repurchase Scheme, the Straus Entities acted with the same knowledge and state of mind as Straus and thus knowingly participated in Straus's breaches of his fiduciary duties.

152.    Ms. Straus has suffered damages because of the conduct of the Straus Entities in aiding and abetting Straus's breaches of fiduciary duty.

## COUNT SEVEN
**Breach of 2006 LLC Agreement and 2015 LLC Agreement - Failure to Make Distributions**

153.    Ms. Straus repeats and realleges the allegations in paragraphs 1 through 152 as if fully set forth herein.

154.    Care One breached the 2006 LLC Agreement by failing to make distributions due to Ms. Straus prior to the purported adoption of the 2015 LLC Agreement by the 8/21 Resolution.

155.    Care One breached Article 4 of the 2015 LLC Agreement and sections A1.3 to A1.9 of Annex I to the 2015 LLC Agreement by failing to make distributions to Ms. Straus after the 2015 LLC Agreement was purportedly adopted by the 8/21 Resolution.

156.    For example, section A1.9 of Annex I to the 2015 LLC Agreement requires Care One, when it anticipates that its members will recognize taxable income resulting from Care One's operations, to make a cash distribution to a member "in an amount equal to 40% multiplied by the amount of Net Profit allocated to" the member for the tax year.

157.    Section A1.9 mandates that such "tax distributions" be "made at such times as shall be appropriate to permit" Care One's members "to pay income tax (including estimated income tax) on such taxable income."

23

158.     On the Schedule K-1 issued to Ms. Straus by Care One for the tax year ending December 31, 2015, Care One allocated to her nearly $900,000 in taxable ordinary business income on her 4.4103437% interest.

159.     Yet, Care One did not distribute any cash to Ms. Straus in 2015.

160.     At a minimum, under section A1.9 of Annex I, Ms. Straus was entitled to receive a tax distribution for the 2015 tax year in an amount calculated as 40% of the taxable ordinary business income allocated to her.

161.     Straus is Care One's "tax matters partner" under the 2006 LLC Agreement and the 2015 LLC Agreement.

162.     Straus did not cause Care One to make any distribution (tax or otherwise) to Ms. Straus for the 2015 tax year.

163.     Ms. Straus has been damaged by Care One's failure to make distributions under the 2006 LLC Agreement and the 2015 LLC Agreement because she has been deprived of moneys to which she is entitled as a member of Care One.

## COUNT EIGHT
### Breach of the Implied Covenant of Good Faith and Fair Dealing

164.     Ms. Straus repeats and realleges the allegations in paragraphs 1 through 163 as if fully set forth herein.

165.     Implicit in the 2006 LLC Agreement and the 2015 LLC Agreement is the understanding that all members of Care One will treat one another in a fair and forthright manner as well as the expectation of shared trust and confidence.

166.     Straus, DES Holding, and DES-C purported to amend the 2006 LLC Agreement in a manner that breached this implied understanding, and Ms. Straus was damaged by the purported amendment.

167.    Specifically, the addition into the 2015 LLC Agreement of new sections 9.8 and 6.1—which were designed to permit Straus and the Straus Entities to wrongfully take Ms. Straus's interest in Care One for less than fair value and then shield them from the consequences of their wrongful conduct—reduced Ms. Straus's membership rights in Care One.

168.    By conceiving and carrying out the Repurchase Scheme, Straus, DES Holding, and DES-C breached the understanding implicit in the 2006 LLC Agreement and the 2015 LLC Agreement.

169.    Care One now contends that Ms. Straus has been divested of her membership interest in Care One at a "repurchase" price that Ms. Straus cannot verify and that she believes to be profoundly improper and inadequate.

170.    Ms. Straus is entitled to receive full and fair value for her membership interest in Care One or, alternatively, to retain her membership interest in Care One.

171.    Ms. Straus has suffered damages because of these manifest violations of the implied covenant of good faith and fair dealing inherent in the 2006 LLC Agreement and the 2015 LLC Agreement committed by Straus, DES Holding, and DES-C.

## COUNT NINE
### Breach of Section 9.8 of the 2015 LLC Agreement

172.    Ms. Straus repeats and realleges the allegations in paragraphs 1 through 171 as if fully set forth herein.

173.    In the alternative, should the 2015 LLC Agreement be found valid and enforceable, the Repurchase Transaction violates section 9.8 of the 2015 LLC Agreement.

174.    Section 9.8(e) of the 2015 LLC Agreement required an independent appraiser to determine the "repurchase" price for Ms. Straus's membership interest, and section 9.8(f) of the

2015 LLC Agreement required the section 9.8(e) appraisal to be delivered to Ms. Straus within 75 days of the 8/21 Resolution.

175.    Straus determined the "repurchase" price; he did not engage an independent appraiser, and he did not obtain (let alone deliver) a written appraisal setting forth a purported value for Ms. Straus's membership interest in Care One.

176.    Straus, DES Holding, and DES-C breached section 9.8(e) and section 9.8(f) of the 2015 LLC Agreement by carrying out the Repurchase Transaction.

177.    Section 9.1 of the 2015 LLC Agreement states that any attempted transfer of a membership interest in Care One that violates any provision of section 9 "shall be null and void *ab initio*" and that Care One shall not register or give effect to any such improper transfer.

178.    Accordingly, Ms. Straus is entitled to a judgment against Care One declaring the Repurchase Transaction null and void *ab initio* and declaring that she is a Class A Member in Care One holding a 4.4103437% Relative Interest (as defined in the 2006 LLC Agreement).

179.    Ms. Straus has suffered damages because of the breach of the 2015 LLC Agreement committed by Care One, Straus, DES Holding, and DES-C, as she has been deprived of all economic and other benefits attendant to her membership in Care One from August 24, 2015 to the present.

## COUNT TEN
### Accounting

180.    Ms. Straus repeats and realleges the allegations in paragraphs 1 through 179 as if fully set forth herein.

181.    Mutual accounts exist between and among Care One, Straus, the Straus Entities, and Ms. Straus by Ms. Straus being a Class A Member of Care One.

182.     Care One unilaterally maintains its own accounts, without Ms. Straus's involvement.

183.     Accordingly, there are complications regarding the amount and frequency of distributions under Care One's various LLC agreements that make it impossible for Ms. Straus to calculate the amount of distributions to which she is entitled absent an accounting.

184.     Care One has a duty to account to Ms. Straus.

185.     Ms. Straus is entitled to an accounting of the distributions she was to receive under the 2006 LLC Agreement and the 2015 LLC Agreement.

186.     There are complications involving the attempted "repurchase" of Ms. Straus's membership interest in Care One that make it impossible for Ms. Straus to ascertain the value of her membership interest in Care One absent an accounting.

187.     Alternatively, if Straus's and the Straus Entities' attempt to "repurchase" Ms. Straus's membership interest in Care One is found valid, Ms. Straus is entitled to an accounting of her membership interest in Care One.

**WHEREFORE**, it is respectfully requested that judgment be entered in favor of Ms. Straus and against Care One, Straus, and the Straus Entities as follows:

A.     Dismissing with prejudice Care One's claim against Ms. Straus for declaratory judgment.

B.     **On Count One**:

1.     Declaring that (i) section 9.8 of the 2015 LLC Agreement is unenforceable because it was adopted in violation of section 11.4 of the 2006 LLC Agreement; (ii) the Repurchase Transaction is null and void *ab initio*; (iii) Ms. Straus is a Class A Member in Care One holding a 4.4103437% Relative Interest (as defined in the 2006 LLC

Agreement); and (iv) Straus, DES Holding, and DES-C acted in bad faith and engaged in intentional misconduct, and their actions otherwise constituted a willful violation of law and the 2006 LLC Agreement.

2.      Awarding Ms. Straus (i) damages in an amount to be determined at trial as the economic and other benefits that would have inured to her as a Class A Member in Care One holding a 4.4103437% Relative Interest (as defined in the 2006 LLC Agreement) from August 24, 2015 to the date of judgment; (ii) all other damages caused by Straus's, DES Holding's, and DES-C's breach of section 11.4 of the 2006 LLC Agreement in an amount to be determined at trial; and (iii) interest thereon.

C.      **On Count Two**:

1.      Declaring that (i) section 6.1 of the 2015 LLC Agreement is unenforceable because it was adopted in violation of section 11.4 of the 2006 LLC Agreement; and (ii) Straus, DES Holding, DES-C acted in bad faith and engaged in intentional misconduct, and their actions otherwise constituted a willful violation of law and the 2006 LLC Agreement.

2.      Awarding Ms. Straus damages for Straus's, DES Holding's, and DES-C's breach of section 11.4 of the 2006 LLC Agreement in an amount to be determined at trial and interest thereon.

D.      **On Count Three**:

1.      Declaring that (i) section 7.2 as set forth in the Second Amendment to the 2006 LLC Agreement is unenforceable because it was adopted in violation of section 11.4 of the 2006 LLC Agreement; (ii) section 7.2 as set forth in the 2006 LLC Agreement as it existed prior to adoption of the Second Amendment is enforceable and controls

28

whether Straus, DES Holding, and DES-C are entitled to indemnification; (iii) Straus,

DES Holding, and DES-C acted in bad faith and engaged in intentional misconduct, and

their actions otherwise constituted a willful violation of law and the 2006 LLC

Agreement; and (iv) Straus, DES Holding, and DES-C are not entitled to indemnification

under section 7.2 of the 2006 LLC Agreement as it existed prior to the Second

Amendment.

2.       Awarding Ms. Straus damages for Straus's, DES Holding's, and DES-C's

breach of section 11.4 of the 2006 LLC Agreement in an amount to be determined at trial

and interest thereon.

E.       **On Count Four**:

1.       Declaring that (i) section 7.2 of the 2015 LLC Agreement is unenforceable

because it was adopted in violation of section 11.4 of the 2006 LLC Agreement; (ii)

section 7.2 as set forth in the 2006 LLC Agreement as it existed prior to adoption of the

Second Amendment is enforceable and controls whether Straus, DES Holding, and DES-

C are entitled to indemnification; (iii) Straus, DES Holding, and DES-C acted in bad faith

and engaged in intentional misconduct, and their actions otherwise constituted a willful

violation of law and the 2006 LLC Agreement; and (iv) Straus, DES Holding, and DES-C

are not entitled to indemnification under section 7.2 of the 2006 LLC Agreement as it

existed prior to the Second Amendment.

2.       Awarding Ms. Straus damages for Straus's, DES Holding's, and DES-C's

breach of section 11.4 of the 2006 LLC Agreement in an amount to be determined at trial

and interest thereon.

F.      **On Count Five**:

1.      Awarding Ms. Straus (i) rescissory damages caused by Straus's breach of his fiduciary duties in conceiving, planning, and executing the Repurchase Transaction in an amount to be determined at trial as the fair value of Ms. Straus's 4.4103437% Relative Interest (as defined in the 2006 LLC Agreement) in Care One determined as of the date of the Repurchase Transaction, the date of trial, or an interim date, whenever the value was greater; (ii) the attorney's fees and costs incurred by Ms. Straus in connection with this litigation because of Straus's egregious, bad-faith pre-litigation conduct; (iii) all other damages caused by Straus's breach of his fiduciary duties in an amount to be determined at trial; and (iv) interest thereon.

2.      Directing Straus, the Straus Entities, and Care One to disgorge all financial benefits received from the Repurchase Transaction.

3.      Alternatively, (i) rescinding the Repurchase Transaction; (ii) declaring that Ms. Straus is a Class A Member in Care One holding a 4.4103437% Relative Interest (as defined in the 2006 LLC Agreement); (iii) directing Straus, the Straus Entities, and Care One to disgorge all financial benefits received from the Repurchase Transaction; (iv) appointing an independent accounting firm to serve, at Straus's sole expense, as a monitor to review Care One's financial condition on a quarterly basis and to issue written reports regarding same to Ms. Straus within thirty (30) days of the close of Care One's fiscal second quarter and Care One's fiscal year end; (v) awarding Ms. Straus damages caused by Straus's breach of his fiduciary duties in an amount to be determined at trial; (vi) awarding Ms. Straus the attorney's fees and costs incurred in connection with this

litigation because of Straus's egregious, bad-faith pre-litigation conduct; and (vii) awarding Ms. Straus interest thereon.

G.      **On Count Six**:

1.      Awarding Ms. Straus (i) rescissory damages caused by the conduct of DES Holding, DES-C, and DES Trust in aiding and abetting Straus's breach of fiduciary duties in conceiving, planning, and executing the Repurchase Transaction in an amount to be determined at trial as the fair value of Ms. Straus's 4.4103437% Relative Interest (as defined in the 2006 LLC Agreement) in Care One determined as of the date of the Repurchase Transaction, the date of trial, or an interim date, whenever the value was greater; (ii) the attorney's fees and costs incurred by Ms. Straus in connection with this litigation because of the egregious, bad-faith pre-litigation conduct of DES Holding, DES-C, and DES Trust in aiding and abetting Straus's breach of fiduciary duties; (iii) all other damages caused by the conduct of DES Holding, DES-C, and DES Trust in aiding and abetting Straus's breach of fiduciary duties in an amount to be determined at trial; and (iv) interest thereon.

2.      Directing Straus, the Straus Entities, and Care One to disgorge all financial benefits received from the Repurchase Transaction.

3.      Alternatively, (i) rescinding the Repurchase Transaction; (ii) declaring that Ms. Straus is a Class A Member in Care One holding a 4.4103437% Relative Interest (as defined in the 2006 LLC Agreement); (iii) directing Straus, the Straus Entities, and Care One to disgorge all financial benefits received from the Repurchase Transaction; (iv) appointing an independent accounting firm to serve, at the Straus Entities' sole expense, as a monitor to review Care One's financial condition on a quarterly basis and to issue

written reports regarding same to Ms. Straus within thirty (30) days of the close of Care

One's fiscal second quarter and Care One's fiscal year end; (v) awarding Ms. Straus

damages caused by the conduct of DES Holding, DES-C, and DES Trust in aiding and

abetting Straus's breach of fiduciary duties in an amount to be determined at trial; (vi)

awarding Ms. Straus the attorney's fees and costs incurred in connection with this

litigation because of the egregious, bad-faith pre-litigation conduct of DES Holding,

DES-C, and DES Trust in aiding and abetting Straus's breach of fiduciary duties; and

(vii) awarding Ms. Straus interest thereon.

       H.     **On Count Seven**:  Awarding Ms. Straus damages for breach of the 2006

LLC Agreement and the 2015 LLC Agreement in an amount to be determined at trial as

those member distributions that were due to be paid to Ms. Straus but were not and

interest thereon.

       I.     **On Count Eight**:

       1.     Awarding Ms. Straus (i) damages caused by the breach of the implied

covenant of good faith and fair dealing inherent in the 2006 LLC Agreement and the

2015 LLC Agreement in an amount to be determined at trial as the fair value of Ms.

Straus's 4.4103437% Relative Interest (as defined in the 2006 LLC Agreement) in Care

One determined as of the date of the Repurchase Transaction, the date of trial, or an

interim date, whenever the value was greater; (ii) the attorney's fees and costs incurred

by Ms. Straus in connection with this litigation because of the egregious, bad-faith pre-

litigation conduct of Straus, DES Holding, and DES-C; and (iii) interest thereon.

       2.     Alternatively, (i) rescinding the Repurchase Transaction; (ii) declaring that

Ms. Straus is a Class A Member in Care One holding a 4.4103437% Relative Interest (as

defined in the 2006 LLC Agreement); and (iii) awarding Ms. Straus damages in an amount to be determined at trial as the economic and other benefits that would have inured to her as a Class A Member in Care One holding a 4.4103437% Relative Interest (as defined in the 2006 LLC Agreement) from August 24, 2015 to the date of judgment and interest thereon.

J.      **On Count Nine**:  (i) Declaring the Repurchase Transaction null and void *ab initio*; (ii) declaring that Ms. Straus is a Class A Member in Care One holding a 4.4103437% Relative Interest (as defined in the 2006 LLC Agreement); and (iii) awarding Ms. Straus damages caused by the breach of section 9.8 of the 2015 LLC Agreement committed by Care One, Straus, DES Holding, and DES-C in an amount to be determined at trial as the economic and other benefits that would have inured to her as a Class A Member in Care One holding a 4.4103437% Relative Interest (as defined in the 2006 LLC Agreement) from August 24, 2015 to the date of judgment and interest thereon.

K.      **On Count Ten**:  Directing an accounting against Care One to determine the full and fair amount of distributions from Care One to which Ms. Straus is entitled, and alternatively, the fair value of her 4.4103437% Relative Interest (as defined in the 2006 LLC Agreement) in Care One.

L.      Granting Ms. Straus such further relief as the Court deems just and proper.

Dated:  November 30, 2017                    **GRUPPUSO LEGAL**

By: *s/ Anthony M. Gruppuso*
    560 Main Street
    Chatham, New Jersey 07928
    Phone: 973.433.9555
    Email:  gruppuso.legal@outlook.com
    *Attorneys for Adina Straus*